196 La. 541

## FEGAN v. LYKES BROS. S. S. CO., Inc.

No. 35908.

Supreme Court of Louisiana.

Dec. 2, 1940.

Rehearing Denied Jan. 6, 1941.

Benjamin Y. Wolf, of New Orleans, for applicant.

Terriberry, Young, Rault & Carroll and Andrew R. Martinez, all of New Orleans, for respondents.

O'NIELL, Chief Justice.

The plaintiff was injured in an accident on the steamship West Tacock while he was employed there as first mate. He sued the owner of the ship for $52,625.24 damages and for $6,813.33 for what is called maintenance and cure. The demand for damages was brought under the act of Congress called the Jones Act, being the Act of March 4, 1915, c. 153, § 20, 38 Stat. 1185, 46 U.S.C.A. § 688, extending to seamen the rights theretofore granted to railway employees under the Federal Employers' Liability Act, being the Act of April 22, 1908, c. 149, § 1, 35 Stat. 65, 45 U.S.C.A. § 51. The demand for maintenance and cure is founded upon the maritime contract of employment. The case was tried by a jury in the Civil District Court for the Parish of Orleans where the plaintiff was given a verdict for $10,000 damages and for $4,800 for maintenance and cure. The judge overruled the defendant's motion for a new trial and gave judgment for the amount of the verdict. The defendant appealed to the Court of Appeal for the Parish of Orleans; and the plaintiff, answering the appeal, prayed for an increase of the judgment to the amount sued for. The court of appeal annulled the judgment for $10,000 damages and dismissed that part of the suit, and at the same time the court annulled the judgment for $4,800 for maintenance and cure, and remanded the case to the civil district court to allow the plaintiff to make further proof of his claim for maintenance and cure. The Court of Appeal put all of the costs of court upon the plaintiff so far as the demand for damages was concerned and put the costs of the appeal also upon the plaintiff so far as the demand for maintenance and cure was concerned, and ordered that the ques-

tion of liability for the other costs of court, so far as the demand for maintenance and cure was concerned, should abide the final determination of the suit. 195 So. 392. This court issued a writ of review at the instance of the plaintiff.

The question of law which induced the court to grant the writ of review was the question of admissibility of certain documentary evidence which the judge of the civil district court held was inadmissible and which the Court of Appeal held was admissible, and to which the Court of Appeal gave consideration in deciding that the accident was caused by negligence on the part of the plaintiff, and not by any negligence on the part of the defendant. Another question of law which we had in mind in granting the writ of review was whether the Court of Appeal was justified in considering the plaintiff's two demands as if they were two separate and independent suits, one for damages and the other for maintenance and cure, and in thus imposing upon the plaintiff the costs incident to his demand for damages, notwithstanding the suit was not disposed of finally, so far as the other demand was concerned.

The facts of the case are set forth in detail in the opinion rendered by the Court of Appeal, reported in 195 So. 392. The accident was the result of an extraordinary recoil or kick-back of a cannon, called a Lyle gun, which the plaintiff fired, under orders of the master of the ship. The gun was a device to be used for sending out a projectile carrying a life line in case of distress, and was a part of the ship's equipment required by the government regulations. The regulations required also that the master of the ship should drill the crew in the use of the gun by having it fired at certain intervals, not less often than once every three months, as a matter of practice and perhaps to make sure that the gun remained in good order. It was for the purpose of one of these drills that the master ordered the chief officer— the plaintiff in this case—to fire the gun. The chief officer, with the aid of two members of the crew, lashed the gun to a three-inch water pipe on the ship's deck, with a 3½-inch rope, to prevent a recoil or kick-back, and then put in what he considered the right quantity of powder, in a cloth bag made by a member of the crew. But when the chief officer touched off the gun it kicked back so hard that it broke its lashings, and hurtled across the deck a distance of about twenty-eight feet, striking the plaintiff on the hip and injuring him very seriously. The ship was then about eighty-five miles south of the mouth of the Mississippi river, opposite Southwest Pass. The chief officer was transferred to a coast guard cutter and brought to New Orleans and placed in the Marine Hospital here. The West Tacock proceeded on her voyage, to Beaumont, Texas,—the port to which she was returning from England. The gun and the broken lashings and everything else having any connection with the accident were kept intact, in the condition in which they were found immediately after the accident, so that an investigation might be made by a marine board of inspectors, called a "C" Marine Board of Investigation, at Beaumont. On the arrival of the ship at Beaumont, the marine board made an investigation, and examined witnesses, in the absence of the chief mate, and sent a report of the board's findings to the Director of the Bureau of Marine Inspection and Navigation, in Washington, D. C. In the report to the director the marine board stated its findings and gave its "recommendations", thus:

"Assistant Inspectors examined the gun and equipment and could find no apparent defect. * * *

"It is the opinion of the Board that the chief mate in preparing the charge used entirely too much powder. The fact that the lashings carried away and the distance the gun kicked back, leaves no doubt in our minds that this was the case. The firing of the gun was part of the mate's duties and the size of charges used was entirely under his control, and we consider the accident was the result of the chief mate's carelessness. Due to the fact that the chief mate was quite badly injured and in our opinion has received sufficient punishment, and that in future he will profit by his experience and perform his duties in a more careful manner, we recommend that no charges be filed against the chief mate and that this case be closed without further action."

The report was signed by the two investigators, with their title as U. S. Local Inspectors acting as a "C" Marine Board of Investigation.

An Assistant Director of the Bureau of Marine Inspection and Navigation, in Washington, approved the findings of the

"C" Marine Board of Investigation, in a letter to the board, thus:

"As it is obvious from an analysis of the testimony that the casualty was due to the chief officer using a quantity of powder in excess of normal, a duty he, under the present regulations, should understand and be qualified in, no blame, therefore, can be attributed to other parties, licensed or otherwise, and under these circumstances you are directed to close this case without further action."

A copy of the record of the proceedings had before the "C" Marine Board of Investigation and of the findings and recommendations of the board, and of the approval thereof by the Assistant Director of the Bureau of Marine Inspection and Navigation, together with a copy of the testimony heard by the board, all duly certified by the Chief Clerk in the Department of Commerce, was offered in evidence by the defendant on the trial of this case before the jury. The plaintiff objected to the offering and his objection was maintained by the judge of the civil district court. But, on appeal, the judge's ruling was reversed by the Court of Appeal, so far as the findings and recommendations of the marine board, and their approval by the Assistant Director of the Bureau of Marine Inspection and Navigation, were concerned; and these documents were considered as important evidence in the court's deciding that the accident was caused by negligence or fault on the part of the chief mate, and that there was no negligence or fault attributable to the defendant.

The plaintiff's objection to the defendant's introducing in evidence the findings and recommendations of the Marine Board of Investigation, and the approval thereof by the Assistant Director of the Bureau of Marine Inspection and Navigation, was that the report and its approval were hearsay evidence, and were nothing more than an opinion of the board and of the assistant director, founded upon testimony which was taken in an ex parte proceeding, had without giving the present plaintiff notice or an opportunity to be present or to cross-examine the witnesses.

The authority on which the Court of Appeal reversed the ruling of the judge of the civil district court and admitted in evidence the findings of the "C" Marine Board of Investigation and the approval thereof by the Assistant Director of the Bureau of Marine Inspection and Navigation is U.S.C.A., Title 28, Judicial Code and Judiciary, sec. 661. This section, which was U.S.R.S. sec. 882, derived from the Act of September 15, 1789, Act of February 22, 1849, and Act of May 31, 1854, originally seemed to provide merely that authenticated copies of records or documents in any executive department which were themselves admissible in evidence should be admissible "equally with the originals thereof". This section, which consisted of only one paragraph, was amended, and two more paragraphs were added, by the Act of June 19, 1934, c. 653, § 6(a), 48 Stat. 1109, so as to make admissible in evidence the records or documents of the several corporations which were created or provided for by the Congress in recent years for performing certain governmental functions. Section 661 as amended, therefore, reads thus:

"(a) Copies of any books, records, papers, or other documents in any of the executive departments, or of any corporation all of the stock of which is beneficially owned by the United States, either directly or indirectly, shall be admitted in evidence equally with the originals thereof, when duly authenticated under the seal of such department or corporation, respectively.

"(b) Books or records of account in whatever form, and minutes (or portions thereof) of proceedings, of any such executive department or corporation, or copies of such books, records, or minutes authenticated under the seal of such department or corporation, shall be admissible as evidence of any act, transaction, occurrence, or event as a memorandum of which such books, records, or minutes were kept or made.

"(c) The seal of any such executive department or corporation shall be judicially noticed."

It appears therefore that this federal statute was extended by the Act of June 19, 1934, so as to make admissible in evidence in any lawsuit an authenticated copy of any public record or public document in any of the executive departments, provided the record or document is of such a character that it should speak for itself. But we do not construe the amendment as abolishing all rules against admitting hearsay evidence. We do not understand that the purpose or effect of the

amendment was to make admissible in evidence against a party to a lawsuit the opinions formed by executive officers from their hearing of testimony in an ex parte proceeding in which the person condemned, —and against whom the opinions are afterwards offered in evidence to condemn him again in a subsequent lawsuit,—was not afforded an opportunity to be present in person or represented by counsel. It is not likely that the amendment was intended to deprive anyone of his fundamental rights in that respect. Besides, it appears that, in case of an investigation such as that which was held in Beaumont, in this instance, any person whose conduct is under investigation, or any other party in interest, is allowed by statute to be represented by counsel, to cross-examine witnesses and to call witnesses in his own behalf. R.S. § 4450 as amended by Act of July 29, 1937, c. 536, 50 Stat. 544, 46 U.S.C.A. § 239(d). Our conclusion, therefore, is that the Court of Appeal should not have admitted in evidence, or taken into consideration in deciding by whose fault this accident happened, the findings or recommendations of the "C" Marine Board of Investigation, or the approval thereof by the Director, or the Assistant Director, of the Bureau of Marine Inspection and Navigation.

■ We have authority, of course, to decide this case on the evidence on which the jury decided it; that is, without considering the documentary evidence which the Court of Appeal considered, and which we have decided was inadmissible. But we prefer that the Court of Appeal, which alone has appellate jurisdiction over this case, should be the first to decide the case on the evidence on which alone the jury decided it; that is to say, without considering the inadmissible evidence. Here is an excerpt from the opinion of the Court of Appeal which indicates that the court's decision was influenced to some extent by the findings of the "C" Marine Board of Investigation and of the Assistant Director of the Bureau of Marine Inspection and Navigation, whose findings were based entirely upon the testimony which was taken in the ex parte proceeding at Beaumont,—viz [195 So. 397]:

"Notwithstanding the assertion of the plaintiff that he used a charge not exceeding two and one-half or three ounces of powder in firing the gun, we are of the belief that he is mistaken in his testimony.

In truth, we think that the underlying cause for the extraordinary recoil of the gun was the use by the plaintiff of an excessive charge of powder. This is the opinion of the 'C' Marine Board of Investigation and of the Director of the Bureau of Marine Inspection and Navigation. The district judge refused to permit these findings to be introduced in evidence. We think he was in error in so doing because the reports of the 'C' Board and the Director of the Bureau are public documents. Under Title 28 U.S.C.A. § 661, it is provided that copies of books, records, papers or documents in any of the executive departments of the United States shall be admitted in evidence equally with the originals thereof when duly authenticated under the seal of the department. * * * Of course, it is to be recognized that this type of evidence is not binding on the court and can be disregarded if it is found that it is unsupported by other proof."

Whether the other proof in this record would be sufficient in itself to warrant the annulling of the verdict of the jury is a question of fact which we prefer should be decided by the Court of Appeal. Hence we shall not pass upon the several charges of fault or negligence made by the plaintiff, but will remand the case to the Court of Appeal for a decision on the evidence on which alone the jury rendered its verdict.

We concur in the opinion of the Court of Appeal that there is not enough evidence in the record to sustain the verdict for $4,800 for maintenance and cure. Therefore, no matter what the Court of Appeal may decide about the plaintiff's claim for damages, the court should remand the case to allow the plaintiff to offer more evidence in support of his claim for maintenance and cure, or for maintenance since he has been an outpatient of the marine hospital.

■ With regard to the court costs, we do not see any good reason for undertaking to separate the costs that are incident to the demand for damages from the costs that are incident to the demand for maintenance and cure. In fact we do not see how the costs could be so separated with any degree of accuracy. Although there are two distinct claims or demands, there is only one suit; and the rule is that if a plaintiff wins any part of his suit he is entitled to recover the court costs. Code of Prac. art. 549. It is true that, by sec-

tion 2 of Act No. 229 of 1910, an appellate court has authority to tax the court costs or any part thereof against any party to the suit, "as in its judgment may be deemed equitable." But we would not deem it equitable in this case to undertake to separate the costs incident to the demand for damages from the costs incident to the demand for maintenance and cure, and to tax the plaintiff for the costs which are deemed incident to the demand for damages if the demand for maintenance should be allowed and if the demand for damages should not be allowed. Therefore, if the Court of Appeal adheres to its judgment rejecting the plaintiff's demand for damages, and remands the case to the civil district court to allow the plaintiff to offer more evidence in support of his demand for maintenance and support, the court should assess only the costs of appeal against the plaintiff, and let all other costs abide the final disposition of the case.

This case is ordered remanded to the Court of Appeal and the record is ordered returned to that court for the case to be proceeded with in accordance with the opinion which we have rendered. The defendant is to pay the costs of this proceeding in the Supreme Court.